1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7
8
9
10
11

RICHARD W. SWETT,

                                Plaintiff,

        v.

MICHAEL J. ASTRUE. Commissioner of
Social Security,

                                Defendant.

Case No. 3:12-cv-05149-KLS

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

12
13
14
15
16
17
18
19

        Plaintiff has brought this matter for judicial review of defendant's denial of his

application for disability insurance benefits.  Pursuant to 28 U.S.C. § 636(c), Federal Rule of

Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard

by the undersigned Magistrate Judge.  After reviewing the parties' briefs and the remaining

record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny

benefits should be reversed and that this matter should be remanded for further administrative

proceedings.

20

FACTUAL AND PROCEDURAL HISTORY

21
22
23
24
25
26

        On December 28, 2007, plaintiff filed an application for disability insurance benefits,

alleging disability as of January 4, 2008, due to diabetes with neuropathy, pain in his extremities,

a ruptured disc, psoriasis, and arthritis. See Administrative Record ("AR") 26; see also AR 202.

That application was denied upon initial administrative review on January 4, 2008, and on

reconsideration on January 15, 2009. See AR 26.  A hearing was held before an administrative

ORDER - 1

law judge ("ALJ") on April 30, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 40-65.

On May 26, 2010, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 26-35. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on February 1, 2012, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981. On March 1, 2012, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #3. The administrative record was filed with the Court on May 22, 2012. See ECF #11. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in assessing plaintiff's residual functional capacity; (2) in discounting his credibility; (3) in evaluating the lay witness evidence in the record; and (4) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. The Court agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, finds that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

DISCUSSION

The determination of the Commissioner of Social Security (the "Commissioner") that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan,

ORDER - 2

772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record.").  "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.      The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520.  If the claimant is found disabled or not disabled

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them.  It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may not try the case de novo, neither may it abdicate its traditional function of review.  It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

at any particular step thereof, the disability determination is made at that step, and the sequential

evaluation process ends. See id.  If a disability determination "cannot be made on the basis of

medical factors alone at step three of that process," the ALJ must identify the claimant's

"functional limitations and restrictions" and assess his or her "remaining capacities for work-

related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's

residual functional capacity ("RFC") assessment is used at step four to determine whether he or

she can do his or her past relevant work, and at step five to determine whether he or she can do

other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her

limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all

of the relevant evidence in the record. See id.  However, an inability to work must result from the

claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those

limitations and restrictions "attributable to medically determinable impairments." Id.  In

assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-

related functional limitations and restrictions can or cannot reasonably be accepted as consistent

with the medical or other evidence." Id. at *7.

The ALJ in this case found plaintiff had the residual functional capacity:

**. . . to perform light work as defined in 20 CFR 404.1567(b) except only occasional operation of foot controls with the lower extremities.  The claimant is also limited to occasional crawling, crouching, kneeling, stooping, balancing, and climbing of ramps and stairs and is precluded from climbing of ladders, ropes and scaffolds.  The claimant should avoid concentrated exposure to temperature extremes, excess humidity or vibrations.  In addition, the claimant should not work around hazards such as unprotected heights or dangerous moving machinery.  The claimant should only occasionally use his hands for handling and fingering.**

AR30 (emphasis in original).  In support of the above RFC assessment, the ALJ provided the

ORDER - 4

1  following evaluation of the medical evidence in the record:

2
> As for the opinion evidence, it was the opinion of the State Agency reviewing
3
> physician, at the initial level of adjudication, that the claimant could lift 50
> pounds occasionally and 25 pounds frequently, stand and/or walk about 6
4
> hours out of an 8 hour workday, and sit about 6 hours out of an 8 hour
> workday.  It was further opined that the claimant was able to frequently
5
> balance and occasionally climb, stoop, kneel, crouch and crawl (Exhibit 3F).
> At the reconsideration level of adjudication, it was the opinion of the State
6
> Agency reviewing physician[, Elizabeth St. Louis, M.D.,] that the claimant
7
> could lift 10 pounds occasionally and 10 pounds frequently, stand and/or walk
> at least 2 hours out of an 8 hour workday, and sit about 6 hours out of an 8
8
> hour workday.  It was further opined that the claimant was able to frequently
> kneel and occasionally balance, stoop, crouch, crawl and climb ramps and
9
> stairs but never climb ladders, ropes or scaffolds (Exhibit [4]F).  The residual
> functional capacity conclusions reached by the State Agency reviewing
10
> physician also supports a finding of "not disabled."  Although these
11
> physicians were non-examining, and therefore their opinions do not as a
> general matter deserve as much weight as that of an examining or treating
12
> physician, they do deserve some weight, particularly in a case like this in
> which there exists a number of reasons to reach similar conclusions, as
13
> discussed in this decision.  While the undersigned notes the opinion of the
14
> State Agency reviewing physicians are inconsistent, the claimant has
> demonstrated a consistent ability to perform medium work as a pizza delivery
15
> driver since his alleged onset date of disability, which would be as [sic] the
> substantial gainful activity level, but for the IREW's.[2]  This provides support

16

17  _____
2 Earlier in his decision, the ALJ found in regard to plaintiff's pizza delivery driver work:

18
> The claimant worked after the alleged disability onset date.  Specifically, the claimant has
19
> worked consistently as a pizza driver for Dominos since his amended alleged onset date of
> disability.  The record shows the claimant earned $12,489 in 2008; $12,310 in 2009 and
> $4,594 so far during 2010.

20
> Earnings that ordinarily show that an individual engaged in substantial gainful activity include
21
> earnings of $940 per month in calendar year 2007, $940 per month in calendar year 2008 and
> $980 [per] month for calendar year 2009.  Based on monthly earning averages, the claimant's
22
> earnings rose to the level of substantial gainful work activity.  However, the claimant alleges
> that he has impairment-related work expenses (IRWE) that reduce his earnings below the
23
> substantial gainful work activity level.  Specifically, the claimant alleges ongoing treatment
> and expenses for diabetes, psoriasis and heartburn.  Based on the record, there are
24
> documented IRWE's that reduce the 2008 and 2009 earnings to just below the substantial
> gainful work activity level.  However, the 2008 earnings appear to remain above substantial
25
> gainful work activity level at $1,001 even with the documented IRWE's including Prilosec of
> $25, alcohol swabs of $15, insulin of $126, antibiotic cream of $110, blood sugar test strips of
26
> $110 and syringes of $80 to 90.  Nevertheless, based on the balance of the evidence, it is
> appropriate to give the claimant the benefit of the doubt with regard to his post-onset work
> activity and find the claimant has not engaged in substantial gainful work activity at any time
> since his alleged onset date of disability.  This is especially appropriate in light of the fact that

ORDER - 5

1    for the conclusion that the claimant is able to perform light work at a true
2    substantial gainful activity level.  Thus, only some slight weight is afforded to
     the assessment of the State Agency reviewing physicians.

3    Based on his examination of the claimant, it was the opinion of Dr. Novak that
4    the claimant was able to [sic] a medium level of work.  It was his opinion that
     the claimant did not have any limitations in his ability to sit.  He opined the
5    claimant was able to stand and walk for a total of 6 hours in an 8-hour
     workday.  It was his opinion that the claimant was able to lift and carry 50
6    pounds frequently and 25 pounds occasionally.  Dr. Novak opined the
     claimant was limited to occasional bending, stooping, and crouching.  In
7    addition, it was opined that the claimant was able to occasionally perform fine
     manipulations.  Dr. Novak indicated that the claimant did not have any visual,
8    communicative or other workplace environmental limitations (Exhibit 2F,
9    page 5).  The undersigned finds the assessment of Dr. Novak to be credible
     and consistent with the findings contained in the body of this report.
10   However, considering the evidence of record as a whole, the undersigned
11   finds the claimant is realistically limited to a light level of work, as set out in
     the body of this decision.  Thus, some weight is afforded to the assessment of
12   Dr. Novak.

13   AR 32-33.

14       The ALJ is responsible for determining credibility and resolving ambiguities and
15   conflicts in the medical evidence.  See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).
16   Where the medical evidence in the record is not conclusive, "questions of credibility and
17   resolution of conflicts" are solely the functions of the ALJ.  Sample v. Schweiker, 694 F.2d 639,
18   642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld."  Morgan v.
19   Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining
20   whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at
21   all) and whether certain factors are relevant to discount" the opinions of medical experts "falls
22   within this responsibility."  Id. at 603.

23

24

25
_____
26       the claimant's employer appears to have made special accommodations for his illness with
         reduced hours and liberal absenteeism leaving early policies.
     AR 28-29.

ORDER - 6

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a

ORDER - 7

1  nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion may

2  constitute substantial evidence if "it is consistent with other independent evidence in the record."

3  <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

4      The Court agrees with plaintiff that the ALJ erred in affording only "slight weight" to the

5  opinion of Dr. St. Louis, on the basis that plaintiff's "consistent ability to perform medium work

6  as a pizza delivery driver" supports a finding that he can perform light work "at a true substantial

7  gainful activity level." AR 32-33.  As noted above, the ALJ himself earlier in his decision found

8  plaintiff's employer during the time he worked as a pizza delivery driver, "appears to have made

9  special accommodations for his illness with reduced hours and liberal absenteeism leaving early

10 policies." AR 29; <u>see</u> also AR 49-51.  The ALJ, however, fails to explain how an individual who

11 needs special accommodations, reduced hours and liberal absenteeism leaving early policies in

12 order to perform a part-time delivery pizza job, is able to perform such medium-level work on a

13 consistent basis without taking into account those significant qualifications.[3]

14      It is unclear, furthermore, how plaintiff's job as a pizza delivery driver also would qualify

15 as light work, again taking into consideration the above qualifications.  This is because in general

16 jobs in the light work category require "a good deal of walking or standing" – more specifically,

17 the "full range of light work requires standing or walking, off and on, for total of approximately

18 6 hours of 8-hour workday" – and the work accommodations plaintiff received were due at least

19 in part to the problems his medical impairments caused in terms of his ability to be on his feet for

20 long periods of time. <u>See id.</u>; 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251 *5-*6.

21 Thus, the ALJ's determination that plaintiff is able to perform light work "at a true substantial

---

[3] Nor does it seem that plaintiff's pizza delivery driver job would be considered to be "consistent" work under the Social Security regulatory scheme, as such consistency appears to require the ability "to do sustained work activities in an ordinary work setting on a **regular and continuing basis**," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184 *2 (emphasis in original).

gainful activity level,"[4] cannot be upheld on the above stated basis.

Plaintiff argues the ALJ's RFC assessment further sufferers from the failure to perform a "function-by-function" analysis of his work-related abilities. SSR 96-8p, 1996 WL 374184 *1. The Court agrees the ALJ erred here as well.  SSR 96-8p, 1996 WL 374184 explains the need for such "function-by-function" analysis in assessing a claimant's residual functional capacity:

> . . . The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. At step 4 of the sequential [disability] evaluation process, the RFC must not be expressed initially in terms of the exertional categories of "sedentary," "light," "medium," "heavy," and "very heavy" work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it.
>
> RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy.  However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level.
>
> At step 5 of the sequential evaluation process, RFC must be expressed in terms of, or related to, the exertional categories when the adjudicator determines whether there is other work the individual can do.  However, in order for an individual to do a full range of work at a given exertional level, such as sedentary, the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual[']s capacity to perform each

---

[4] While it may be that plaintiff's earnings alone indicate he performed substantial gainful activity as a pizza delivery driver, as discussed above, the ALJ found that job did not rise to the substantial gainful activity level because of his employer's impairment-related accommodations.  Further, if a claimant performed work under "special conditions," that work may be found not to constitute substantial gainful activity. 20 C.F.R. § 404.1573(c) (listing the following as examples of such special accommodations: being "allowed to work irregular hours or take frequent rest periods," being "assigned work especially suited to [the claimant's] impairment," being "able to work only because of specially arranged circumstances," and being "permitted to work at a lower standard of productivity or efficiency than other employees").  Only where the work done under special conditions shows the claimant has "the necessary skills and *ability* to work at the substantial gainful activity level," may the claimant be deemed to have performed at the substantial gainful activity level. Id. (emphasis added).  As explained above, it is far from clear that plaintiff has demonstrated that ability in this case.

ORDER - 9

1
2

of these functions in order to decide which exertional level is appropriate and
whether the individual is capable of doing the full range of work contemplated
by the exertional level.

3
4

Initial failure to consider an individual's ability to perform the specific work-
related functions could be critical to the outcome of a case. . . .

5
6
7
8

Id. at *3.  As noted above, the ALJ assessed plaintiff with "**the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)**." AR 30 (emphasis in original).  But the mere statement that plaintiff can perform light work as defined by regulation, falls well short of the function-by-function analysis required here.

9
10

II.      The ALJ's Assessment of Plaintiff's Credibility

11
12
13
14
15
16
17
18

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

19
20
21
22
23
24
25
26

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

ORDER - 10

credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273,

1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of

physicians and other third parties regarding the nature, onset, duration, and frequency of

symptoms. See id.

   The ALJ discounted plaintiff's credibility in part on the basis that the objective medical

evidence fails to support his allegations of disability. See AR 31-32.  The ALJ's determination

that a claimant's subjective complaints are "inconsistent with clinical observations" can satisfy

the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294,

1297 (9th Cir. 1998).  Plaintiff does not challenge this basis for discounting his credibility, but

points out that a claimant's pain testimony may not be rejected "*solely* because the degree of pain

alleged is not supported by objective medical evidence." Orteza v. Shalala, 50 F.3d 748, 749-50

(9th Cir. 1995) (quoting Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir.1991)) (emphasis

added); see also Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir.2001); Fair v. Bowen, 885 F.2d

597, 601 (9th Cir. 1989).[5]

   In this case the ALJ provided the following additional reason for finding plaintiff to be

not fully credible:

> At one point or another in the record, the claimant has admitted to essentially
> normal activities of daily living.  For example, as discussed above, the
> claimant engages in work activity.  In a function report completed by the
> claimant, he indicated that he was able to help feed and water his two dogs
> (Exhibit 6E, page 2).  Additionally, in a function report completed by the
> claimant's wife, Christie Swett, it was expressed that the claimant assists with
> cooking meals and household chores.  She also indicated that the claimant did
> not have any problems with personal care.  In addition, she expressed that the

---

[5]  The same is true with respect to a claimant's other subjective complaints. See Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir. 1995) (finding that while Bunnell was couched in terms of subjective complaints of pain, its reasoning extended to claimant's non-pain complaints as well).

ORDER - 11

1

2

> claimant was able to shop for complete meals, cleaning supplies and pet food,
> as well as attend church 2 to 3 times a month (Exhibit 5E, pages 2, 3, 4 and 5).
> Overall, the claimant's activities of daily living are not consistent with an
> individual who is precluded from all work activity.

3

4    AR 32.  The Ninth Circuit has recognized "two grounds for using daily activities to form the

5    basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).

6    First, such activities can "meet the threshold for transferable work skills." Id.  Thus, a claimant's

7    credibility may be discounted if he or she "is able to spend a substantial part of his or her day

8    performing household chores or other activities that are transferable to a work setting." Smolen,

9    80 F.3d at 1284 n.7.

10

11       The claimant, however, need not be "utterly incapacitated" to be eligible for disability

12   benefits, and "many home activities may not be easily transferable to a work environment." Id.

13   In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized

14   for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722.

15   Under the second ground in Orn, a claimant's activities of daily living can "contradict his [or

16   her] other testimony." 495 F.3d at 639.

17

18       The Court agrees with plaintiff that the particular activities of daily living noted by the

19   ALJ in his decision are not sufficient to discount his credibility regarding his alleged inability to

20   work.  Specifically, the evidence in the record concerning those activities fails to show plaintiff

21   is able to spend a substantial part of his day performing household chores or other activities that

22   are transferrable to a work setting. See AR 53-54, 185, 210, 211-15, 218-23, 233, 242, 333.  Nor

23   do they necessarily contradict plaintiff's "other testimony." See id.  Thus, because the only valid

24   basis the ALJ presented for discounting plaintiff's credibility was inconsistency with the medical

25   evidence in the record, the ALJ's credibility determination cannot stand.

26

ORDER - 12

1

2        III.        The ALJ's Evaluation of the Lay Witness Evidence in the Record

3                    Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must

4        take into account," unless the ALJ "expressly determines to disregard such testimony and gives

5        reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.

6        2001).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably

7        germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly

8        link his determination to those reasons," and substantial evidence supports the ALJ's decision.

9        Id. at 512.  The ALJ also may "draw inferences logically flowing from the evidence." Sample,

10       694 F.2d at 642.

11                   As noted by the ALJ, plaintiff's wife completed a function report, in which she set forth

12       her observations of plaintiff's activities. See AR 211-18.  But as plaintiff points out, Ms. Swett

13       also stated that "standing for long periods of time" bothers him. AR 216.  Ms. Swett also stated

14       that plaintiff was unable to walk "for a long time." Id.  The ALJ did not address either of these

15       statements.  Given that the ability to perform light work requires, as noted above, "a good deal of

16       walking or standing," the ALJ's error cannot be said to be harmless. 20 C.F.R. § 404.1567(b);

17       SSR 83-10, 1983 WL 31251 5-6.

18

19       IV.        The ALJ's Findings at Step Five

20                   If a claimant cannot perform his or her past relevant work, at step five of the disability

21       evaluation process the ALJ must show there are a significant number of jobs in the national

22       economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir.

23       1999); 20 C.F.R. § 404.1520(d), (e).  The ALJ can do this through the testimony of a vocational

24       expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180

25       F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

26

ORDER - 13

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 59-60.  In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 60-61.  Specifically, the vocational expert testified that such an individual could perform the jobs of information clerk, order caller and checker. See id.; see also Dictionary of Occupational Titles ("DOT") 237.367-018, 1991 WL 672187; DOT 209.667-014, 1991 WL 671807; DOT 222.387-014, 1991 WL 672094.  Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. See AR 34.

Plaintiff argues, and defendant does not disagree, that the ALJ erred in relying on the vocational expert's testimony to find plaintiff capable of performing the above other jobs, since each of those jobs requires frequent handling, and the ALJ found he could perform handling on only an occasional basis. See AR 30; DOT 237.367-018; DOT 209.667-014; DOT 222.387-014. The ALJ may rely on vocational expert testimony that "contradicts the DOT, but only insofar as

ORDER - 14

the record contains persuasive evidence to support the deviation." <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1435 (9th Cir. 1995). The ALJ, furthermore, has the affirmative responsibility to ask the vocational expert about possible conflicts between her testimony and information in the DOT. <u>See</u> <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704.

Before relying on evidence obtained from a vocational expert to support a finding of not disabled, therefore, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the DOT, and explain in his or her decision how the discrepancy was resolved. <u>Haddock</u>, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1, *4. Although the ALJ asked the vocational expert if his testimony was consistent with the information contained in the DOT, to which the vocational expert erroneously testified that it was (<u>see</u> AR 63), the ALJ failed to explain in his decision how he resolved the discrepancy that clearly is there (<u>see</u> AR 34). Because of this error and those previously discussed herein, the ALJ's step five finding – and thus his determination that plaintiff is not disabled – cannot stand.

VIII.   <u>This Matter Should Be Remanded for Further Administrative Proceedings</u>

The Court may remand this case "either for additional evidence and findings or to award benefits." <u>Smolen</u>, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." <u>Id.</u>

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." <u>Smolen</u>, 80 F.3d at 1292; <u>Holohan</u>

ORDER - 15

1   v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

2   where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
> claimant's] evidence, (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made, and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled were such
> evidence credited.

6   Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

7   Because issues still remain in regard to plaintiff's residual functional capacity – as well as his

8   credibility and that of the lay witness evidence in the record – and accordingly also in regard to

9   plaintiff's ability to perform other jobs existing in significant numbers in the national economy,

10  remand to defendant for further consideration of these issues is warranted.

11          Plaintiff argues that because the ALJ improperly rejected the testimony of his wife, that

12  testimony must be credited as true, which in conjunction with the vocational expert's testimony,

13  would result in a finding of disabled.  It is true that where lay witness evidence is improperly

14  rejected, that testimony may be credited as a matter of law.  See Schneider v. Barnhart, 223 F.3d

15  968, 976 (9th Cir. 2000) (finding that when lay evidence rejected by ALJ is given effect required

16  by federal regulations, it became clear claimant's limitations were sufficient to meet or equal

17  listed impairment).  But as noted by the Ninth Circuit, the courts do have "some flexibility" in

18  how they apply the "credit as true" rule. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

19          In Schneider, furthermore, the Court of Appeals dealt with the situation where defendant

20  cited no evidence that contradicted the statements of five lay witnesses regarding the claimant's

21  alleged disabling impairments. 223 F.3d at 976.  Schneider thus is distinguishable on its facts.  In

22  addition, the lay witness statements plaintiff argues the ALJ failed to properly consider – i.e., the

23  fact that standing for long periods of time bothers him and his alleged inability to walk for a long

ORDER - 16

period of time – do not in themselves indicate he is totally disabled from performing all work. Nor does the vocational expert's testimony, for the reasons discussed below, necessarily show plaintiff is prohibited from working.

Plaintiff argues that when provided with the specific functional limitations assessed by Dr. St. Louis, the vocational expert testified that an individual with those limitations would not be able to perform any other jobs. See AR 61-63.  But while as discussed above the ALJ did not provide a proper basis for rejecting Dr. St. Louis's opinion, it is not clear that the ALJ would be required to adopt the limitations contained therein.  This is because as the ALJ discussed in his decision, the record contains objective medical evidence that plaintiff is capable of performing at a level greater than sedentary as found by Dr. St. Louis, although the ALJ did not fully adopt the full extent of that other evidence.[6] See AR 32-33, 336, 339.

Lastly, plaintiff asserts he should be found disabled in light of the vocational expert's additional testimony that there would be no jobs for an individual who had to leave work early or call in sick with the frequency plaintiff testified that he experienced. See AR 63.  It is true the Ninth Circuit has held that remand for an award of benefits is required where the ALJ's reasons for discounting the claimant's credibility are not legally sufficient, and "it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony." Connett, 340 F.3d at 875.  Again, though, the Ninth Circuit has stated that it is "not convinced" the "crediting as true" rule is mandatory. Id.  Thus, at least where findings are insufficient as to whether a claimant's testimony should be "credited as true," the courts do

---

[6] Where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." Lester, 81 F.3d at 834 (citation omitted). However, where the ALJ is not required to find the claimant disabled on crediting of evidence, this constitutes an outstanding issue that must be resolved, and thus the Smolen test will not be found to have been met.  Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003).  Given the conflicting medical evidence in the record, outstanding issues requiring resolution remain, and thus the Smolen test has not been met here.

ORDER - 17

1    "have some flexibility in applying" that rule. Id.; but see Benecke, 379 F.3d at 593 (applying

2    "crediting as true" rule, but noting its contrary holding in Connett).[7]  For the same reasons

3    discussed above in regard to the conflicting medical evidence in the record, the Court finds that

4    applying the credit as true rule here is not warranted at this time.

5                                          CONCLUSION

6
7            Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded

8    plaintiff was not disabled.  Accordingly, defendant's decision is REVERSED and this matter is

9    REMANDED for further administrative proceedings in accordance with the findings contained

10   herein.

11           DATED this 2nd day of January, 2013.

12
13
14
15                                          Karen L. Strombom
                                            United States Magistrate Judge
16

17

18

19

20

21

22

23

24

25   _____
     [7] In Benecke, the Ninth Circuit found the ALJ not only erred in discounting the claimant's credibility, but also with
26   respect to the evaluations of her treating physicians. 379 F.3d at 594.  The Court of Appeals credited both the
     claimant's testimony and her physicians' evaluations as true. Id.  It also was clear in that case that remand for further
     administrative proceedings would serve no useful purpose and that the claimant's entitlement to disability benefits
     was established. Id. at 595-96.

ORDER - 18